Now the other business at hand. We have before us one case, an en banc case before us, 22-3009 United States v. Hohn. Would counsel for the appellant please make your appearance and then proceed. And I'm sure you've been informed that you have three minutes and then we will bombard you. Great. Thank you, Chief Judge Holmes. Cannon Chandigam of Paul Weiss for Appellant Stephen Hohn. May it please the court, this case involves a familiar episode of egregious prosecutorial misconduct. A prosecutor deliberately and unjustifiably listened to a defendant's confidential communications with his attorney. As this court held in Schillinger, that conduct violates the Sixth Amendment and constitutes structural error that necessitates some form of remedy. Schillinger is sound and this court should not overrule it. Schillinger is consistent with the Supreme Court's cases on the Sixth Amendment right to counsel, which presuppose that a defendant's communications with his attorney will be private and secure from intrusion by the prosecution. Schillinger is also consistent with the Supreme Court's cases on structural error, which made clear that certain types of errors implicate fundamental fairness, are likely to be prejudicial, and are not readily susceptible to harmless error analysis. This court should reject the government's efforts to water down Schillinger by requiring a defendant to prove that the communication was also protected by the attorney-client privilege in order to invoke the protections of the Sixth Amendment. The district court erred by determining that no Sixth Amendment violation occurred in this case, and its judgment should be reversed and the case remanded for proceedings on the appropriate remedy. I welcome the court's questions. Can you give some examples of why prejudice isn't good enough? Why the structural error route is correct? And just give me a flavor of something that you envision. And I'll come back to the facts of this case, too, as part of your response. Sure. Judge Tamkovich, the Supreme Court, in its most recent cases on structural error, has laid out three relevant considerations. And I've alluded to them already, but let me go into them in more detail. The first is whether or not the violation at issue inevitably signals fundamental unfairness. In our view, the answer to that question is yes, because the adversarial system itself necessarily depends on a wall between the defense and the prosecution, who, after all, are the defendant's adversary at trial. Second, on the issue of prejudice, a constitutional violation is structural where it is likely to be prejudicial and not susceptible to harmless error analysis. Now, what do I mean by that? What I mean by it is that as this Court has recognized in Orduno Ramirez, in the context of a trial, the risk of prejudice is acute. When the prosecution is privy to the defense strategy, there are any number of ways in which that can affect the prosecution's approach. Now, when I say this sort of error is not susceptible to harmless error analysis, what do I mean by that? What I mean is that I think it is very difficult for a court to conduct this sort of analysis, precisely because when you are dealing with information concerning defense strategy, and when we are talking about confidential communications, what we are talking about are communications about legal advice or strategy relevant to trial. In that circumstance, again, it is very difficult to know exactly how the prosecution's strategy has been affected. It is a per se rule, so in every circumstance we are presuming that there is some benefit to trial strategy. My question is, can't a trial judge sort that out after an appropriate objection and do the harmlessness analysis? Because we do harmless error for a lot of constitutional violations. That's correct, and I think that this type of violation is a little bit different. I would point this Court in particular to the Ninth Circuit's decision in the Danielson case, which I think does a very good job of explaining why. Here is the Ninth Circuit's reasoning. What the Ninth Circuit says there is, where the prosecution obtains particular pieces of evidence as a result of some constitutional violation, placing the burden on the defendant conducting a harmless error analysis makes good sense. Why? Because the defendant is in at least as good a position as the government to show why a particular piece of evidence was prejudicial. There are all sorts of contexts. One that came up this morning in one of the panel arguments was the context of a Brady violation. When you're analyzing materiality, you're just simply weighing all of the evidence in the case. That's very straightforward. What the Ninth Circuit went on to say is that in a case where a wrongful intrusion results in the prosecution obtaining the defense's trial strategy, the question of prejudice is more subtle because the prosecution team knows what it did and why, and the defendant can only guess. Didn't Danielson, though, was that a rebuttable presumption of prejudice? The Ninth Circuit took a somewhat different approach. It took this burden-shifting approach. And that's not the approach you would like us to take. It's not the approach we would like this Court to take, though I would note that that approach is not quite as distant as it might seem, Judge Rossman, because it's relatively easy in the circuits that adopt this approach, the Ninth Circuit and the First Circuit, for a defendant to make out a prima facie case where the defendant can show that the violation was intentional. And to complete my answer to Judge Timkovich's question, I think a particular reason why the juice is not worth the squeeze and why this Court should not require some inquiry into prejudice or harmless error in this context is because the violation itself presupposes that the prosecution is acting purposefully. You have a prosecutor who is deliberately intruding into the attorney-client privilege. And in those circumstances, the prosecutor is the last person you should trust when the prosecutor comes in and says this is no big deal. This Court will be well aware of the fact that in this case, the prosecutor at issue, Assistant United States Attorney Moorhead, denied even listening to the tapes. The district court rightly, given all the factual circumstances, determined that that was not credible. If this case were to be sent back, even for the government to show harmless error, the government would presumably have to somehow show that based on the district court's determination that there was intentional listening, there was nevertheless no prejudice. Do we have any idea what the content of this conversation was? We do, Judge Hartz, because the district court made determinations about that. And to be sure, there were determinations made in camera. I would point the court to page 1754 of the record in volume 2, where the district court found that in the conversation at issue, our client Stephen Hone and his then-counsel James Campbell discussed four things. First, whether Hone wanted to go to trial. Second, his criminal history. Third, the evidence against him. And fourth, the problems with that evidence. And the district court made those determinations about what the contents of the tape actually were. And for a prejudice analysis to occur in this case, the government, assuming for the moment that the government would bear the burden under a harmless error type analysis, would have to show that that had no impact on trial strategy. And as we explained in the briefs, this is no different from if you were playing poker and the other side knew what your whole cards were, of course that's going to affect the strategy. Isn't that a decent argument, that there was some prejudice? But you're asking us to always reverse, regardless of the content of that conversation. This was his first meeting with that attorney, was it not? Yes, that is correct. So it could have been, the judge found otherwise. What's your name? How do I reach you? Just mundane things like that that would have nothing to do with trial strategy. Why should we automatically reverse in that circumstance? Two points in response to that, Judge Hartz. First, the Schillinger test itself provides some protection against that hypothetical, because you have to have confidential attorney-client communications, communications about legal advice and strategy relevant to trial. And so if you were just having a ministerial conversation, I don't think it would fall into that. So that's all you're asking for, you would maintain that limit? Yes, correct. We are not suggesting in any way that the court should not apply that. But second, as I was saying to Judge Timkovich, I think it's important to keep in mind two things about how the Supreme Court has gone about the taxonomy of errors as structural errors or as ordinary errors. I think that the court has made clear that, again, the question here is not whether there is never a case that one can imagine where there would be no prejudice. Instead, the court has taken into account, and I would point to Weaver among other cases, both how likely is it that there is going to be prejudice in this context, and number two, is this, again, the type of error that is susceptible to harmless error analysis? Is it so difficult that in that subset of cases where there may be no prejudice, is the juice worth the squeeze? And our submission is that it isn't because the violation here, and this is where the other factors come in, is a violation that implicates fundamental fairness. And just to put the third of the three considerations on the table, does this protect an interest separate from the right to a fair trial? This morning there was the panel argument in the Valdez case, which involved a similar type of violation but in the sentencing context. And one of the issues that those members of the court who were on the panel discussed is, you know, is this really like ineffective assistance of counsel, a Strickland violation? And I think that the answer is no. This is a different type of Sixth Amendment violation, because as the Supreme Court explained in the Gonzales-Lopez case, Strickland ultimately is a right that is derived, even though it's a Sixth Amendment right, it's a right to effective counsel that is derived from the overarching right to a fair trial. In that context, it obviously makes sense to analyze prejudice. You have to win on the attorney-client privilege issue. You know, how does that play into the structural error piece? If we were to conclude there's no attorney-client invasion or it was waived. Sure. I think in some sense the answer to that question is related to what I was just about to say, which is this is a little bit different from the attorney-client privilege, and this is also a right that is distinct from the right to a fair trial. So the right to a fair trial is obviously a very familiar right. The Sixth Amendment right we're talking about here is the right to have confidential attorney-client communications free from unwanted interference by the prosecution. So in other words, the violation is complete when the intentional intrusion takes place. Now, the attorney-client privilege— And pardon my ignorance, but what's the support for that? I mean, why isn't prejudice part and parcel of determining whether there's a Sixth Amendment violation to begin with? So I think it is because, as the Supreme Court indicated in Gonzales-Lopez, the only context in which prejudice has been required is in the Strickland context. When you think about all of the other Sixth Amendment rights, including the Sixth Amendment rights that have been said to be structural— you know, admission of guilt by counsel over a defendant's objection, the choice of counsel, the right to self-representation, where, if anything, self-representation is more likely to be prejudicial than the alternative, the complete denial of counsel— those are all contexts in which, because of the nature of the Sixth Amendment right being protected, the Court has not required prejudice. It's the only context in which prejudice is required, and I know that this came up in the— It did, and it did. And some of the cases you're talking about were structural— those limited class of structural error cases. And there, prejudice was presumed. So, yes, there was a Sixth Amendment violation. What I'm talking about is, absent the prejudice being conclusively presumed, why isn't it prejudice baked in something you have to show in order to establish a violation? In other words, you're talking about harmless error. Harmless error presumes there's a violation, which we did talk about. Yeah, Chief Judge Holmes, I understand your question. Let me do my best to answer it. The only Sixth Amendment context in which prejudice is baked into the violation itself is in the context of effective assistance of counsel. And as you'll be aware, in a case in which you have completely ineffective assistance of counsel, even that's not true. You have chronic, and you have the presumption of prejudice. Why is presumption required in that context? It's required, as Justice Scalia explained in Gonzales-Lopez, and I would urge the Court to read this discussion because it provides a great deal of clarity on this issue. The right to effective assistance of counsel, to be free of ineffective assistance, is derived from the right to a fair trial. That's why you have to look at the impact on the trial itself, and therefore you have to establish prejudice just to show a Sixth Amendment violation. Now, it's clear, first of all, that in Schillinger the Court obviously did not require that. And I think when you look out across the other circuits, some circuits apply the burden-shifting framework to which Judge Rossman alluded, but I think that it is unusual for circuits in a case in which you have an intentional intrusion. We're not aware of any cases involving an intentional intrusion where all the requirements of Schillinger are satisfied, where a court of appeals has required prejudice. What about Weatherford? Weatherford has all kinds of things to say about prejudice, double digits, the number of times it talks about prejudice. And it says, absent some sort of possibility of an injury, there can be no Sixth Amendment violation. That's not one of those kinds of structural errors where prejudice is baked in. It's looking at whether there's prejudice in this case. But I think it's important to keep in mind, Judge Phillips, that in Weatherford you had two important factors that were absent. First, the purposeful intrusion, and second, the intrusion by the prosecution. And I don't think that the Supreme Court in Weatherford was suggesting that there could be no context in which there would be structural error analysis, either where prejudice is presumed or where the error is simply characterized as structural. Indeed, quite to the contrary, the court unambiguously noted at page 554 that if the prosecution had learned of the overheard conversations, Respondent would have a much stronger case. A much stronger case, meaning that prejudice still would need to be shown, even in that instance in which the prosecution obtained the information and then used it in some fashion to the defendant's detriment. You'd still have to show prejudice. It's not structural, in other words. Schillinger offers much less than that. And Mr. Hohn's case offers much less than that kind of actual use of information that is purposely derived and communicated to prosecutors. And it says structural error. Why is that not inconsistent with the language that you just read? I don't think it's inconsistent with that, because I think that what the court was saying in that portion of the discussion was that it is a much more acute constitutional violation where you have an intentional intrusion by the prosecutor. And that is for the first reason that I pointed to as to why there should be structural error. This goes directly to the fundamental fairness of the proceeding and the breakdown of the wall between the prosecution and the defense. And this is precisely why it doesn't make sense to conflate the requirements of the Sixth Amendment with the requirements of the attorney-client privilege. Let me ask you this. Even if we agreed with you under Morrison, isn't it a somewhat hollow victory? Because before you're entitled to any remedy, you have to show prejudice, don't you? So I think that the Supreme Court's teaching in Morrison was that based on the type of Sixth Amendment violation that was at issue there, dismissal was too strong of a remedy. The court made quite clear that prejudice was required for the remedy of dismissal, though the court did note in a footnote that in extreme cases, dismissal could be warranted in order to deter future violations. That would be an issue for— that you have to tie the remedy to the harm and that there has to be harm before you're entitled to any remedy. So I'm not sure under Morrison that—I mean, they just presumed a violation in Morrison and jumped right to the remedy question. I mean, why shouldn't we do the same thing? So, Judge McHugh, the issue of the remedy is not before this court. Judge Robinson obviously did not address the issue of the remedy in light of her determination that there was no violation. So I think if the case were to go back to Judge Robinson, if we were to prevail before this court, the question would be teed up whether the appropriate remedy is effectively a dismissal, that is to say a reversal of the conviction with prejudice in light of the fact that our client has served a considerable portion of his sentence. Under Section 2255B, Judge Robinson would have a great deal of discretion about the appropriate remedy, but the remedy could also simply be a new trial, and the government presumably would get up here, my friend Mr. Brown would get up here and say, well, that would be the appropriate remedy if the case gets sent back. That would be an issue to be litigated below, and I think you're right, Judge McHugh, that in order to get the more stringent remedy of effective dismissal here, that we would have to show something more, and that would be to be litigated. Well, do you read Morrison as saying that you could get a remedy of a new trial without showing any prejudice? Yes, I do read Morrison that way. I read Morrison as saying that dismissal was too strong of medicine for the violation that took place there. I do not think that a showing of prejudice is required in order to get any remedy at all. Now let me underscore one important additional point with regard to the remedy, and this actually I think goes to the argument as to why structural error is warranted here as well. If you have, I'll call it a virtuous prosecutor, who realizes that the prosecutor has intruded into the attorney-client relationship. Say you have a prosecutor who gets tapes of prison recordings, doesn't realize that there's an attorney-client recording, and then in listening to it realizes, oh my goodness, that is an attorney-client recording. What should that virtuous prosecutor do? Of course, the virtuous prosecutor should go to the court and go to defense counsel, and at that point there are going to be more modest remedies. If, for instance, it turns out that the tapes concern a particular witness, you could bring in another prosecutor to question that witness. There are things that can be done in that circumstance. Why is that? Why is it a more modest remedy if you invade the attorney-client relationship but you confess? Because there are steps that the court can take prophylactically at that point. It's because there would be less prejudice to you, right? There are steps that can be taken to cure any violation that could take place at trial. And this is unquestionably a trial right in the sense that it is a right that attaches, obviously, when a defendant is indicted, and in light of this court's decisions in Spaith and Orduno Ramirez, today we're talking about cases that go to trial, that result in a guilty verdict, and what should be done in those circumstances. So do you contend that in your client's position it's basically impossible for you to make a showing of prejudice? Well, I think that where you have an issue that goes to trial strategy, that is correct. Now, Schillinger itself was a little bit... I mean, because the definition of prejudice in this type of case, a realistic possibility of injury to the defendant or benefit to the government. If the government has surreptitiously discovered your trial strategy, isn't that in and of itself evidence of a realistic possibility of injury to your client or benefit to them? Well, that is basically our view, which is to say... And when you look at some of the decisions from other circuits, I think that what they say is pretty much that where you have an intentional intrusion by the prosecutor, that is the prejudice, or that is, at a minimum, a prima facie case of prejudice. And so if you frame the standard in terms of a realistic possibility, I think what I would say is there is always going to be a realistic possibility in this circumstance. And that's sort of why I think Judge Carson, when you look at earlier cases like Schillinger, they often talk about structural error in terms of a presumption of prejudice. I think the basic idea is that prejudice is very likely. There is a realistic possibility of prejudice, precisely because this is information that in ways that may be difficult to identify but that are very likely is going to have an effect on the way that the prosecution conducts. Right. And I'm going to give Mr. Brown a chance to address this too, but it just seems to me that if I'm the prosecutor and you say, would you like to know the defense strategy or not? If I can know it, I know it's going to be better for me. So it's going to benefit the government. I mean, it's almost self-executing. Well, that's our sort of common sense view here. And again, keep in mind that the rule that we're advocating today only applies in cases involving purposeful intrusions. And so again, if you have an inadvertent intrusion, I would think that what a prosecutor is going to do is take some steps to remedy that. I think every prosecutor knows that they should not be making themselves privy to conversations between a defendant and his or her attorney. Indeed, the United States Attorney's Office in Kansas, after this scandal occurred, modified its policy and now has a written policy to that effect, as do many other districts around the country. And so the rule we're advocating here is really a rule of common sense. Well, was the hypothetical that you described with the prosecutor, the virtuous prosecutor, was that an inadvertent or was that a purposeful intrusion? I think that would be an inadvertent intrusion. Now, if that prosecutor, after realizing that it was an attorney-client communication, said, gee, I'd like to keep listening to this, then it could become a purposeful intrusion. But what we mean by a purposeful intrusion is intentionally listening to an attorney-client communication. And that is what Judge Robinson at page 1779 found. Counsel, could you focus for a moment on the scope of communications that you argue the Sixth Amendment covers? In other words, you argue that the attorney-client privilege does not define the scope of the Sixth Amendment, but then go on to say that it covers the contents of non-privileged, confidential attorney-client communications. Can you explain what you mean by that? In particular, what you mean by confidential? If it's not the attorney-client privilege, what exactly are the contours that we're dealing with? I think the principal delta here is that we think, Judge Matheson, that when the attorney-client privilege has been waived, you can still have a communication whose content is confidential for purposes of the Sixth Amendment. And that's because the attorney-client privilege ensures confidentiality of communications between attorneys and their clients in a wide range of contexts, whereas the Sixth Amendment is really protecting the adversarial system. It is protecting the relationship between the defendant and his attorney from intrusions by the attorney's adversary. So I think as a practical matter, it's similar in the sense of the content of the communication, in that it has to be, as I said earlier, communications about legal advice or strategy relevant to the trial to which the Sixth Amendment right has attached. I have the same problem, Judge Matheson has, and I've seen how you can find this. What if the defendant had a conversation with his attorney, his early attorney, goes back to the cell and tells the cellmate, hey, I had the most interesting conversation with my attorney, and describes it. The cellmate then reports to a guard and goes to the prosecution. Is that protected by the Sixth Amendment? Yeah, Judge Hartz, I'll answer your question and any others. I would like Chief Judge Holmes to reserve some time for rebuttal, but of course I'm happy to answer as many questions as there are, and I'll answer that question directly. I would say, first, the question is, were the contents of the communication within our rule, and I'm assuming from your question that the answer to that is yes, or communications about strategy. Second, I think the question would be, has there been a waiver of the Sixth Amendment right, by virtue of the communication with the cellmate? And that would require the familiar constitutional inquiry into whether or not there was a knowing and intelligent waiver of the right. I think that would require knowledge that the communication is going to the adversary, the prosecution, and an intelligent waiver. So, if CCA in this case had given a warning that specifically said, this communication is going to be shared with the prosecutor, proceed at your own risk, we would have a different case, because we would have to defend against the claim that that is sufficient if you proceed for a Sixth Amendment waiver. We don't think what took place here is enough, and I would refer the court to the last section of our panel brief on that issue. If this went back for another trial, would anything change? There's no evidence that would be purged. It would be a meaningless run-through with another flip of the coin possibility for Mr. Holm, right? It might or it might not. Well, what would? You say that every case involves a possibility of prejudice and so forth, and the legal strategy was discussed. We don't have the telephone call. Why don't we have the telephone call so we can assess that? The district court reviewed the telephone call in camera. It was not made part of the record. But I think on the issue of prejudice, that issue is obviously distinct from, related to, but distinct from the contents of the communication. Now, part of the reason why I can't tell you whether or not a new trial would be different is precisely because we are not in a position to tell you how this affected the trial strategy. And if the district court on remand rejects our argument for a more ambitious remedy and just says a new trial, we're obviously content to proceed in that way. I will note one thing, Judge Phillips, which is that it is a little bit strange that after all of these years of the Kansas U.S. Attorney's Office scandal concerning these recorded conversations, and after the United States Attorney's Office has resolved a number of these cases, it has been unwilling to resolve this case, even though our client has served now more than a decade, half of his sentence. The U.S. Attorney's Office has been unwilling to agree to a sentence reduction or any form of relief in this case. And that is really the reason why we are here. Well, you haven't identified any prejudice. You haven't said this evidence came in that wouldn't have. And that might cause a reassessment. But there's a six-minute call introductory with a new attorney where we do not have the call, and the notion that there was something prejudicial. You've heard the call. Have you not? I have not listened to the call. My co-counsel has. All right. And so if there was something in there that was going to cause evidence to be purged, we would have heard about that. Judge Phillips, what I would say is this. There are going to be easy cases on prejudice. Schillinger itself was an easy case on prejudice because there you had the prosecutor commenting on the defendant's own testimony in a way that reflected what the prosecutor had learned about the defendant's choice of words. There are going to be those easy cases. The problem here is that there are going to be hard cases, these cases involving trial strategy where the effects are going to be subtle. And I think in some sense what you need to know is that the prosecution, of course, would love to have information about trial strategy in the same way that any litigant in a criminal or civil case always would. And so this rule really serves a purpose beyond merely knocking out these cases regardless of whether there's a showing of prejudice. The rule serves a foundational interest in protecting the adversary system in the criminal context where a defendant's rights are paramount. That is how the Supreme Court has analyzed this, and pretty much everything that you just said can be said about any of the Sixth Amendment rights that the Supreme Court has subjected to structural error analysis. And that is because outside the context of effective assistance of counsel, what you are really doing in all of these contexts is protecting the relationship between the defendant and his counsel. You will have your final time. Great. Thank you, Chief Judge Holmes. Good afternoon, Your Honors. James Brown for the United States. With me at counsel table is the United States Attorney for the District of Kansas, Kate Brubaker. May it please the Court. Your Honor, it is time for this Court to overrule Schillinger and discard its presumed prejudice rule. That rule is contrary to the Supreme Court's precedent and 10 other circuits which require that prejudice from an intrusion be demonstrated on a case-by-case basis rather than presumed. The presumed prejudice rule should be discarded for two main reasons. First, it cuts much too broadly and is over-inclusive. That rule applies to cases where prejudice is factually impossible. It applies where prejudice is readily disprovable. It applies to cases where the information was obtained from untainted and independent sources. It cuts much too broadly. The second reason this Court should overrule Schillinger is because there's no basis for treating a groundless prosecutorial intrusion as structural error, which is the basis for Schillinger's presumed prejudice rule. The Supreme Court has stated that structural errors always result in unfairness and their harmfulness is hard to measure. But even a groundless prosecutorial intrusion is not always unfair and its harmfulness is not hard to measure. Indeed, 10 other circuits and the Supreme Court agree that the measurement of harmfulness or unfairness is prejudice, which courts routinely assess and measure in this context and others on a case-by-case basis. Even if this Court does not overrule Schillinger and reverse Schillinger, it should still affirm on the basis that the Sixth Amendment never attached to Mr. Hone's call because the call was not confidential. Mr. Hone knowingly and voluntarily chose to make a non-confidential call, so he lacked a reasonable expectation of confidentiality in the call, which is a requirement for a Sixth Amendment violation. Mr. Brown, could I just jump in on that point? You're arguing that, in your brief, that to the extent the Sixth Amendment protects non-privileged communications, that is, communications outside the attorney-client privilege, it protects only those in which defendants have a reasonable expectation of confidentiality. Could you explain how that test is different from the attorney-client privilege? And, again, I've asked a similar question to opposing counsel. Sort of sketch out the contours, if we disagree that it's limited to attorney-client privilege. Well, from a practical point of view, the test is not all that dissimilar to the attorney-client privilege. As this Court knows, the attorney-client privilege has been around since the common law, and courts routinely deal with its ins and outs every single day in this country, and there are very well-defined principles and rules that define the attorney-client privilege. The Supreme Court uses the attorney-client privilege as a framework for analysis for Sixth Amendment violations, as evidenced through footnote 4 of the Weatherford opinion. Now, is there a difference between the attorney-client privilege and a confidential communication? The way I take the Court's question, the Court is asking, can a communication be not covered by the attorney-client privilege but still confidential? Still covered by the Sixth Amendment. Right. Well, a communication is not covered by the Sixth Amendment unless it's confidential. So let's talk about when a communication is confidential. We look at the Melbourne Standard, which is the standard that the District Court used to determine whether a communication is confidential. In Melbourne, the Fifth Circuit said that a communication is confidential if it's intended to remain confidential and if it was made under circumstances such that it was reasonably understood and expected to be confidential. Now, if we compare that standard to the attorney-client privilege, it would be hard to find a real distinction. So we think that the attorney-client privilege basically is the framework that is used to define a Sixth Amendment violation. Is there any case other than Weatherford and footnote 4 that you rely on where the Supreme Court has engaged in a threshold assessment of attorney-client privilege to consider the Sixth Amendment right? Your Honor, we don't know of another Supreme Court case that has done that. There are several circuit court cases that have done that. I would point the Court to specifically the Ginsburg case in the Second Circuit, the Melbourne case in the Fifth Circuit, the Harre case in the Eighth Circuit, the Daniel case in the Ninth Circuit, and the Asformis case in the Eleventh Circuit. They all basically define their Sixth Amendment analysis in terms of whether the communication at issue was privileged. If you look at the Asformis case, which is the case that the Supreme Court just denied to Serrario, the word privilege is probably there 25 times. That's how they determined whether there was a Sixth Amendment violation. Our point is that privilege is just a proxy for confidentiality. There really can't be much difference between the two and this Court should just stick with the framework that has been around since the common law rather than doing what the defendant asked this Court to do. How do you square that argument, Mr. Brown, with page 554 of Weatherford? In Weatherford, there was certainly comparable to our situation a non-confidential communication and yet the Supreme Court said on page 554 that we are not agreeing with petitioners that whenever a third party is present that the defendant assumes the risk. And then the Court went on to discuss the language that the opposing counsel cited, noting that there may very well be a Sixth Amendment violation notwithstanding the presence of a non-confidential communication. Well, Your Honor, first of all, we think that by that language the Court might have been leaving the door open to the hypothetical possibility that a communication could be confidential even though it's not privileged. We think the Court might have left the door open to that possibility. However, the Court said we need not agree that. The Court didn't say we don't agree that. The Court didn't need to agree to that proposition that the Court read because that proposition was not essential to the determination of the decision. If you look at the proposition that the Court just read, the government argued exactly that, that the defendant takes the risk every time the defendant brings a third party into a meeting. And the Court was just saying we don't need to agree to that because in that case, in the Weatherford case, nothing from that third party was communicated to the prosecutor. So if a federal public defender, for example, interviews a pretrial detainee in the prison and then there is a guard present, the prosecutor can, without violating the Sixth Amendment, ask the guard what was discussed with the lawyer because all of those communications are going to be non-confidential because a third party is going to be present. Well, first of all, if I could just preface the answer, I'll answer the Court's question happily so, but I'd like to preface it by saying one thing. The government would not condone that conduct in any way. And as far as the government obtaining attorney-client communications or listening to them, that is not a practice that we condone or defend or even engage in. So we would not condone that if that happened. Now, the Court asked, would that be a Sixth Amendment violation? In that case, we think that if the communication would be privileged between the defendant and his attorney and the information that was conveyed to the prosecutor would have to be suppressed from the case on some basis. Even though the guard has heard it? The mere presence of a third party doesn't render the communication non-privileged. Well, isn't that the whole point of our case? Your whole argument in terms of the relationship between the privilege and the Sixth Amendment is that it's a non-confidential communication that destroys the privilege. It will also destroy the Sixth Amendment right. Right. And, Your Honor, if I could explain. Yeah. In Schillinger, there was a case that that communication was, in fact, privileged. A communication can remain privileged if a third party is in the room, if the third party is a confidential agent. If the third party is a confidential agent, then the communication is privileged even though the third party is in the room. Now, that means that the third party has to be reasonably necessary to facilitate the communication and the defendant has to reasonably believe that the third party will keep the communication confidence. In the court's hypothetical, that guard was not reasonably necessary to the communication and the defendant would have had no reason to think that the guard would have kept the communication confidence. By contrast, in Schillinger, the attorney paid the guard. The attorney said, none of this goes out of this room. The attorney told the guard, consider yourself a member of the defense team. So, in that case, the defendant, the guard in Schillinger would have been a confidential agent because that guard was reasonably necessary to facilitate the communication and the defendant reasonably would have thought the guard would have maintained the confidence based upon what was going on in the situation. They're completely different. Now, the court may be wondering where I get that and I just want to be clear. We get that from the third restatement of the Law Governing Lawyers, section 70, footnote 2, the confidential agent theory that I just announced. And this is why I say that the attorney-client privilege basically covers almost every situation. It's been around since the common law. There's a restatement on the Law Governing Lawyers that talks about almost every factual permutation that there could be. So, it is a valid and adequate framework to analyze Sixth Amendment claims. Isn't this case different, though, in this regard? I see an unfairness in that the defendant isn't calling up the attorney on the telephone because nobody wants to drive across the street. The defendant's been removed miles and miles and miles, oftentimes, away from the attorney where that access isn't available. And so, if the defendant's going to talk to the attorney, it's going to be on that telephone. And if you say that the jail recording at the start that says, this will be monitored, will be recorded, is sufficient to waive the privilege, isn't that a time when the Sixth Amendment has to be broader? Because otherwise, you can just sit and listen to those all day long, can't you? Well, as we said before, us sitting and listening to those all day long is not something that we would condone or defend or do, but getting to the course hypothetical, the defendant has an opportunity to make a confidential call. All we can do is give him the opportunity that he has to make a confidential call. He deliberately chose not to make a confidential call. How is there any unfairness with that? Well, is there a line that he can make a confidential call on? There was a process that CCA told him about that he acknowledged that he knew about that he was supposed to tell his attorney to fax the attorney's phone number to CCA and CCA would not record phone calls going to that number. What about counsel's suggestion that the recording simply say, and by the way, the prosecutor can have this, the agents can have this, anyone in the world can have this. Wouldn't that be a stronger case for you? If the recording said that, it would be a stronger case, but that's not necessary to make our case. Under the attorney-client privilege, when you reveal a confidence to a third party, that extends to all third parties. And here, keep in mind that the defendant knew he was being recorded. There was no hiding that. It was not a surreptitious recording. He deliberately chose, deliberately chose to make a non-confidential call. Counsel, does your argument require us to understand government here as the prosecution and the facility that's holding Mr. Hone? The court, Judge Rostrom, that's a good question. I appreciate the court answering that. The answer is no, it doesn't. The defendant, by waiving it to any third party, the defendant waived the attorney-client privilege to all third parties. So at the end of the day, it doesn't matter if the facility was part of the prosecution team. By waiving it to any third party, he waived the privilege to all third parties. And in waiving that privilege, he waived confidentiality. But you're not contending, at least anymore, as I understand, that the facility holding Mr. Hone should be considered an adversary under Schillinger. Oh, we don't see why the facility is not an adversary under Schillinger. We don't think that's necessary to prevail on our case, though. I mean, obviously, if somebody is being held in federal custody in a facility that is contracted by the federal government and they're notified in four ways that their calls are being recorded and that they can be recorded for public safety, and the defendant knows, and in this case, Mr. Hone said he knows that if he talked about a matter affecting public safety, it would be put into discovery and should be put into discovery. So he knew that he was talking to CCA and to law enforcement authorities because public safety is a quintessential law enforcement problem. Did the district court make a factual finding that he did not know that the prosecution team would be listening? I think the district court made a fact finding that he didn't believe that the prosecution would be listening, but we maintain that that belief was an assumption that was unreasonable, given the many warnings that he received notifying him that his conversation would be recorded and monitored for safety at CCA. If we look at this from the Sixth Amendment perspective, and we don't agree with you that it's co-extensive with attorney-client privilege, that it may be broader, it requires a knowing and voluntary waiver. And if you don't look at the government as the government, every piece of it, you have specific findings here from the district court that while Hanner stood the prison was going to listen to it, he had no understanding that they would then share it with the prosecution to be used against him in his case. That doesn't sound like a knowing and voluntary waiver of his Sixth Amendment right to me. Well, Your Honor, going to the waiver, the waiver, of course, can be effectuated through a course of conduct indicating waiver. That's what the Bregui case says, and that's what the North Carolina v. Butler case says. Now, you maintain that the defendant did have an understanding that his calls could be given to law enforcement. He acknowledged that at our hearing, and when he knew that his calls were being recorded for public safety, on that form that he signed saying that his calls are being monitored for public safety, public safety is a quintessential law enforcement function. Law enforcement includes prosecutive authorities as well. Why is it relevant? Because the petitioner's entire argument is that this was an unjustified intrusion into the attorney class communications. They acknowledge any number of times in their briefing that if there was some public safety justification, that's not what they're talking about. I guess I'm not understanding the court's question completely. If the court could maybe reframe it a little bit. Well, you're saying that he understood that there may be some sort of public safety justification to inquire into these attorney-client communications, right? Yes, sir. And I'm saying, why is that relevant? Because the petitioner's argument is that there was a violation of the Sixth Amendment, acknowledging they concede that if there was a safety justification, that that would not be within the Sixth Amendment protections. That they're urging. It's relevant for a few reasons, Your Honor. First of all, it's relevant because it shows that he waived the attorney-client privilege. When you waive the privileges to one third party, you waive it to all third parties, and the third parties here included the prosecution. So it's relevant in that respect. And so it also shows that he waived. That also constitutes a waiver by a course of conduct. So it's also relevant for that purpose. Did I answer? I hope I answered the court's question. Sure. Yeah. Okay. So, Mr. Brown, if we agree with you that the Sixth Amendment does not protect Mr. Hone's phone conversation because he didn't have a reasonable expectation and a confidentiality or he waived it, could we affirm without addressing the Schillinger rule? Yes, the court could affirm. Because a confidential communication is necessary to a Sixth Amendment violation. If the court finds that the communication was not confidential, then by definition there can be no Sixth Amendment violation. Schillinger's rule and rationale only comes into play when the court considers whether or not the defendant has to show prejudice or has shown prejudice. Because prejudice is also an element of the Sixth Amendment violation. But because he's missing the element of confidentiality, this court could affirm on the district court's finding that the communication was not confidential, even if the court does not overrule Schillinger. How is prejudice an element, say, in McCoy, the autonomy cases, or in Cronic, when there is no counsel provided at all? There are a number of cases, aren't there, where the Supreme Court has recognized that there is a Sixth Amendment violation, notwithstanding the fact that you may be, you know, not prejudiced at all. In fact, you may be disadvantaged by exercising your right to pro se representation. Your Honor, we would answer that question by directing the court to the Cronic case, page 658, where the court said there has to be some prejudice. And here's I'm quoting the court. The court said, quote, absent some effect of the challenge conduct on the reliability of the trial process, the Sixth Amendment guarantees generally not implicating, period, end quote. And for that proposition, the court cited Morrison and Weatherford. So the court is saying that there has to be some effect on the reliability of the trial process, and that effect is prejudice. And then we'd also ask the court to look at Weatherford. I think it's page 552, where the court talks about the type of prejudice you can have in this context when conversations are overheard. And the court said that when it was talking about the Black case and the O'Brien case, which were situations where people overheard conversations, the court said in a case where a conversation is overheard, the constitutionality of the conviction depends upon whether or not the overheard conversation produced directly or indirectly any of the evidence offered at trial. So that confirms that there's got to be some prejudicial effect. How can we ever know, though? Because, for example, the district court makes a finding that the trial strategy was recorded and listened to by your office. And what if the prosecutor says, you know what? Yeah, I heard it. They talked about their strategy. It had no effect on me. It was the same. I did the same thing I was going to do anyway. How is that rebutted? Well, that's rebutted by looking at the facts of the case. For example, you look at whether or not the information obtained was actually usable or exploitable. If the information obtained was not usable or exploitable, then there would be no reason to question the prosecutor's statement. The prosecutor doesn't know it, but Judge Bacharach has a colorful history. And he did this and he did that. And then, miraculously, at trial, his cross-examination has all of those things. But the prosecutor denies using them. Well, then that would be evidence that it was used. And that's something the court could look at. The court should look at whether or not the overheard conversation produced evidence, directly or indirectly, that was offered at trial. Why isn't use relevant to remedy and really not whether the violation is complete? I'm sorry. Why isn't use relevant just to remedy and not whether the violation is complete? In other words, the violation is complete without regard to use. Well, Your Honor, we would go back to what Judge McHugh said, that Morrison tied the remedy to the harm. And you can't have a remedy without harm. So that's why you need to consider use because the use basically lets you determine the harm. In terms of the remedy. The use lets you determine the harm. And Morrison says, and I didn't meet you at the court. What I'm getting at is maybe a better way for me to ask the question is when does the government think the violation that is at issue here is complete? Oh, when is the violation established and complete? Yes. And after that, you go to the remedies, what the court is asking? Correct. Okay. The violation would be complete once the court concludes that there has been some effect of the challenge conduct on the reliability of the trial process. And that, again, comes from the chronic case, which I just quoted. And that's when the violation would be complete. So the violation would be complete upon prejudice showing? Absolutely. Yes, Your Honor. That's correct. Counsel, see if you can help me on this. I've been thinking about the waiver issue. And I think it's inaccurate to say that waiver is only established by knowing and intelligent relinquishment of a known right. Whatever the exact language is. And I'm particularly thinking in terms of confidential communications and the privilege of confidential communications. And my understanding is, and tell me if it's wrong, is that you waive a privilege as soon as you make the communication not confidential. And if you make it not confidential with one other person, then you've lost the privilege. Even though you may still think that person won't tell someone who could hurt you worse, hurt you more with that. Can you think of privileges of confidential communications that aren't waived simply by disclosure to another person? Yes, Your Honor. And that goes back to the confidential agent doctrine that I was discussing, I think, with Judge Baccarat. Okay. It's still confidential when there's a confidential agent. I'm not talking about that situation. You might have multiple clients that you're talking to at the same time. But aside from someone who's within the confidential unit, do you know of circumstances where there's not waiver as soon as it's communicated to someone outside that confidential unit? Your Honor, none of those circumstances come readily to mind. That might be because the framework for attorney-client privilege works so well to define a system of violation. Like we said, it's been here since the common law. All the rules are right there. They're written down. We don't need to create a new rule. We just go to the attorney-client privilege. And to get to the court's question, when the defendant reveals a confidence outside of the circle of the defendant as attorney and the confidential agents, he's waived the privilege to answer the court's question. In doing so, he's also waived any confidentiality that goes with the privilege and confidentiality itself. Can the defendant define who the confidential agents are? Here's what I'm thinking about, just so you don't have to take a shot in the dark. We have a situation where I'm talking to my attorney. I have someone with me, my best friend, who I have trust implicitly. And I want them there to be a second ear to make sure I'm getting the advice right. Can I make that person a confidential agent? Well, Your Honor, we just go back to the test of a confidential agent for attorney-client privileges. That test is whether or not that third person was reasonably necessary to facilitate the communication. In Your Honor's hypothetical, I think it would be. And the second part of that is whether or not the defendant reasonably believed the third person would keep the communication with confidence. And I think that would also be met in Your Honor's hypothetical. So the defendant, yes, does have a say in whether somebody's a confidential agent. Once again, that comes from the Third Restatement of Law Governing Lawyers, Section 70, footnote F. What if I'm in prison and I'm calling my lawyer on the phone, and I mistakenly believe that the recordings will never be shared with prosecutors, except if I talk about committing a future crime? The question is not whether the belief is mistaken. The question is whether the belief is reasonable. If you're given several warnings that your conversations are subject to monitoring and coding, and you get those, you sign a statement saying, I agree that CCA can monitor my recordings for public safety and for the safety institution, that mistaken belief is not a reasonable belief. Well, maybe my belief is not mistaken at all in that hypothetical or in that fact pattern, because what they were used for was something entirely different. So I agree that you could use them for those things, but those weren't even implicated in the conversation. Well, once again, we don't just go back to this sort of implicates the selective waiver, the selective waiver doctrine in the attorney-client privilege context. And this Court recognizes selective waiver, that you can't make a selective waiver to one third person and not to all third persons. So unless the defendant in the Court's hypothetical is told specifically, your conversations will only be given to CCA. They will not be given to any other party out there in the universe. You can have every confidence that they will not be given to the prosecution or anybody else, and that would make that belief more reasonable. And that would basically, it could make CCA a confidential agent in the conversation. I'm not saying it does. But getting to these hypotheticals, we think the Court should just let the law develop rather than come up with some totalistic rule to figure out when conversations are privileged and when they're not. This law of privilege is set forth in excruciating detail. Almost every factual situation has been covered. The Court does not need to create a new constitutional rule of criminal procedure, as the defendant asked this Court to do today. Mr. Brown, let me ask you a question about structural error. One of the things that kind of struck me in the first 30 seconds of your argument was you never once mentioned the reason that we're here, which is your argument in your panel briefing that Schillinger violates is contrary to Weatherford and Morrissey. Do you withdraw that argument? Oh, absolutely. So I haven't seen anything yet where you respond to the petitioner's argument that in Morrissey, as Petitioner's Counsel alluded to, the Court was only talking about prejudice in terms of dismissal of the indictment as a remedy, and in Weatherford there was no Sixth Amendment violation because the information was never shared with the prosecutor. So how do you respond to the petitioner's distinctions of Weatherford and Morrissey on structural error? Well, you know, in Morrison, the Court found that the assumed deliberate intrusion was harmless, right? And so that is absolutely irreconcilable with any notion of structural error, which basically is premised on the fact that an intrusion of this type cannot be harmless. So that would be our response, and we do set out those arguments in our en banc response brief. But in Morrison, the Court assumed a violation even though it said that they had demonstrated no prejudice of any kind. So it separated the violation from the remedy and assumed a violation even without a showing of prejudice, but said you're not entitled to any remedy. Right. We need to push back on that a little bit, Your Honor. We don't agree exactly with the way the Court framed what Morrison did. Morrison assumed a violation for the sake of argument, but at page 366 the Court explicitly held open the possibility that there may not have been a Sixth Amendment violation at all. The Court said the Sixth Amendment violation, if any, provides no justification for interfering with criminal proceedings. And then the Court went on to say that the assumed deliberate violation was harmless on page 366. The Court said there's no effect of a constitutional dimension which needs to be purged to make certain that the respondent has been effectively represented and not unfairly convicted. It said there's no harm, no remedy. The Court said we're not going to say if there's a violation, but we know that even if there is one, there's no remedy because there was no harm. Right. Can't we do the same thing here? Why do we even need to get into this whole other mess? Can't we say Mr. Hahn has admitted he can't show prejudice? And so we just go through the exact same analysis as Morrison and say, even if we assume there's a violation, you're not entitled to any remedy because you haven't shown prejudice. We think that that view is exactly right, Judge McHugh, and we'd ask the Court to adopt that view. Now, I see that my time is up. I've gone over my time, and I thank the panel for giving me the extra time. I would retire and ask for affirmance at this point unless any member of the panel has any further questions. No further questions. Thank you for your consideration. Thank you, counsel. Three minutes, please. May it please the Court, there are two flaws in the government's position. First is the suggestion that part of this constitutional analysis is whether there is a reasonable expectation of confidentiality. Of course, that was not true on the facts of Schillinger itself because there was a deputy present in the room. And so what we're really talking about here is engrafting that as an additional requirement. Wait a minute. The deputy was an agent of defense counsel. The whole point was that the deputy was supposed to be working for the defense. Why wouldn't he have a reasonable expectation of privacy? That was hotly disputed in the underlying case, and this Court, in adopting the constitutional standard, did not require that as an independent element. And I would respectfully submit that it shouldn't be required as a constitutional matter. The Constitution does not ordinarily incorporate principles of state law or federal common law into the constitutional standard. Remember the Supreme Court's decision in Crawford where the Court refused to incorporate the requirements of the hearsay rule. And I would submit that it would be quite strange to the founding fathers to think that the scope of the Sixth Amendment constitutional right depended on a footnote in the third restatement on the conduct of lawyers. Not surprisingly, really, only the Fifth Circuit and the Eleventh Circuit applying legacy Fifth Circuit law have unambiguously done that, and we respectfully submit that this Court should not do so. Now, the other argument that the government makes is that the defendant should bear the burden for this type of violation of showing prejudice. Now, as has been discussed in Morrison itself, the Supreme Court assumed the existence of a Sixth Amendment violation without looking into whether or not there is prejudice. And our core submission to this Court is that outside the context of Strickland, the Sixth Amendment does not require such a showing. And I would point the Court to the Supreme Court's decision in Gonzales-Lopez. At page 147, the requirement that a defendant show prejudice in effective representation cases arises from the very nature of the specific element of the right to counsel at issue there. Effective, not mistake-free representation. In Gonzales-Lopez, the Court said unambiguously at 146, no additional showing of prejudice is required to make that Sixth Amendment violation complete. And in footnote 4 on page 149, we rest our conclusion of structural error upon the difficulty, the difficulty of assessing the effect of the error. So, too, here. And we would respectfully submit that in a case involving intentional misconduct by the prosecutors, it would be extraordinarily unfair to require a defendant to show the absence of prejudice from the prosecution becoming privy to trial strategy. In conclusion, I would just say that the conduct that took place in this case was a stain. It was a stain on my home state of Kansas, it was a stain on the Justice Department, and it was a stain on the justice system as well. All we are asking for in this case is the opportunity to seek a remedy before the district court. Morrison itself involved only the strictest remedy of dismissal. And if the evidence is as strong, Judge Phillips, as you suggested that it might be, it may very well be that if a new trial is ordered, the government could obtain a conviction. But all we are asking for is vindication of the defendant's right here. And it is a right to have a trial that is free of a prosecutor who is privy to the defendant's trial strategy. That is all we are asking for here. And that is why a rule of structural error is appropriate, again, leaving the issue of the appropriate remedy to the district court. And so we would ask respectfully for a reversal of the district court's judgment and a remand to the district court for further proceedings. Thank you. Could I just ask one last question? Counsel? I was struck by your closing, and I was wondering whether the presumption of prejudice and structural error, whether that should apply, should it make a difference whether there has been a systematic pattern of intrusions as opposed to a single one? So I would respectfully submit that where it probably is most relevant, Judge Matheson, is on the question of a remedy. That is where I think the consideration of deterrence primarily comes into play. Now, to be sure, I think that this Court's opinion in Schillinger itself, and the Court, I think, has picked up on this, I believe, in the Orduno-Ramirez case as well, referred to deterrence in determining whether or not an error should be characterized as structural in the first place. And maybe it goes to the fundamental fairness question, which is really, I think, the key. Is this an error that inevitably implicates fundamental fairness? But I think at a minimum, and the footnote in Morrison bears this out, where you have systematic misconduct, I think employing a stricter remedy in order to deter further violations would be wholly appropriate. Thank you, Counsel. Case is submitted. Thank you for your argument. Fine argument.